IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

M.D., a minor child proceeding through )
MELODY SHULER as parent and )
next friend, )
)
)
           Plaintiff, )
)
v. )   Civil Action No. 3:13CV329–HEH
)
SCHOOL BOARD OF THE CITY OF )
RICHMOND, et al., )
)
           Defendants. )

## MEMORANDUM OPINION
(Dismissing Plaintiff's Complaint)

THIS MATTER is before the Court on the minor Plaintiff's Motion to Proceed *In Forma Pauperis* (ECF No. 1), filed by his parent and next friend on May 22, 2013. In the accompanying Order, the Court grants Plaintiff's motion and permits him and his next friend to proceed in this case without paying the Court's filing fee. However, for the reasons set forth herein, the Court finds that Plaintiff's Complaint fails to state any federal cause of action. To the extent that any state law claim remains, the Court declines to exercise supplemental jurisdiction over it. Accordingly, the case will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6).

# I. BACKGROUND[1]

During the relevant events of this case, Plaintiff was a six-year-old African-American child attending Summer Hill Elementary School ("Summer Hill"). (Compl. at ¶¶ 5, 9.) Between February and the end of April 2013, other children—identified only as children of Hispanic ethnicity—persistently teased Plaintiff on the basis of his race and perceived sexual orientation. (*Id.* at ¶¶ 9-12.) Specifically, the other students repeatedly and continuously directed vulgar and offensive racial epithets at Plaintiff, verbally abused him, physically assaulted him, and stole his property. (*Id.* at ¶¶ 10-12, 23.) The other students also insinuated that Plaintiff was gay, apparently owing to Plaintiff's non-violent demeanor. (*Id.* at ¶12.) In short, the Plaintiff was subjected to what might be properly characterized as severe bullying. (*Id.* at ¶ 23.) Ultimately, this led Plaintiff to suffer extreme emotional damage and a fear of school, even after he later enrolled in a new school. (*Id.* at ¶¶ 13-14, 40.)

From the outset of these events, Plaintiff's parents went to the school and repeatedly sought assistance and intervention from the principal and vice principal. (*Id.* at ¶¶ 18-21, 50-52.) As early as March 2013, Plaintiff's mother requested a copy of the school's policies and practices for dealing with bullying, but was not given any such information until April 15, 2013—after she sought the information from the City of

---

[1] As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to Plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Also, because Plaintiff proceeds *pro se*, the Court endeavors to liberally construe his allegations, however inartfully pleaded. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)).

Richmond School Board ("School Board"). (*Id.* at ¶¶ 20-22, 53.) Despite repeated requests that the bullying children be disciplined, school officials routinely told Plaintiff's parents that they could do no more than speak with the offending children. (*Id.* at ¶¶ 18-19, 25, 29, 54, 59.) Specifically, Vice Principal Raymond Bowser ("Vice Principal Bowser") told Plaintiff's mother "that he could only punish the children within the limits of the authority given to him and that he did so and he could not control the children." (*Id.* at ¶ 19.) Under considerable pressure from Plaintiff's parents, on April 10, 2013, Principal Sheleta Crews ("Principal Crews") indicated that she would personally address the situation forthwith. (*Id.* at ¶ 30.)

On April 15, 2013—within days of Principal Crews agreeing to address Plaintiff's bullying problem—Plaintiff's parents withdrew him from Summer Hill. (*Id.* at ¶ 34.) Shortly thereafter, Plaintiff met with a "bullying specialist" who recommended that Plaintiff remain at Summer Hill. (*Id.* at ¶ 36.) That specialist also met with Principal Crews, who agreed to develop a plan to prevent and stop the bullying of Plaintiff. (*Id.* at ¶¶ 37.) However, Principal Crews was unable to contact the parents to develop such a plan prior to the child's enrollment in a new school, as Plaintiff never returned to Summer Hill. (*Id.* at ¶ 39.) Plaintiff maintains that he continued experiencing the residual effects of the trauma suffered at the hands of bullies even after his transfer to a new school. (*Id.* at ¶ 40.)

Plaintiff—proceeding through his next friend because he is a minor—brought the instant action against the School Board, Principal Crews, and Vice Principal Bowser (collectively "Defendants"). In Count I he asserts a federal claim for discrimination

3

under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* based on allegations of a racially hostile educational environment. In Count II Plaintiff asserts a federal claim for discrimination under Title IX[2] of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*[3] He also asserts state law claims for negligence, gross negligence, breach of contract, and intentional infliction of emotional distress. In his prayer for relief, Plaintiff seeks $120,000 in compensatory damages, $70,000 in punitive damages, and injunctive relief. Because Plaintiff proceeds *in forma pauperis*, the Court has reviewed his pleadings to determine whether he states a plausible claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii). Applying the appropriate standard, the Court finds that Plaintiff does not state a claim against Defendants.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court shall dismiss a case brought *in forma paueris* if the Court determines that the pleadings fail to state a claim for which relief may be granted. To state a claim, the Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to

---

[2] Sex discrimination claims brought against schools under Title IX are not cognizable under the Civil Rights Act of 1964, but were created by Congress with the passage of Title IX of the Education Amendments Act of 1972. Title IX of the Civil Rights Act of 1964, 42 U.S.C. § 2000h *et seq.* involves the criminal contempt proceedings for failure to comply with other portions of the Civil Rights Act of 1964. The two statutes are not to be confused.

[3] In Count II, Plaintiff also references Title IV as providing authority for a discrimination claim based on perceived sexual orientation. This appears to be a reference to Title IV of the Civil Rights Act of 1964, which addressed segregation in public schools. 42 U.S.C. § 2000c *et seq.* In the Complaint at issue, however, there are no allegations of segregation, so these facts do not appear to implicate Title IV. Accordingly, the Court will address Count II only as a claim brought under Title IX of the Education Amendments Act of 1972.

4

relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)). To that end, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation and internal quotation marks omitted). At the same time, courts recognize that a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (Posner, J.) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *Orthmann v. Apple River Campground*, 757 F.2d 909, 915 (7th Cir. 1985); and *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).

## III. DISCUSSION

The issue here is not whether Plaintiff has suffered severe bullying on account of his race and perceived sexual orientation at the hands of fellow students. Indeed, the allegations in the Complaint, if proven, evince a pattern of intolerable treatment that no child nobody should be required to endure in a public school, especially one six-years-old. Instead, the pivotal issue is whether Plaintiff states a claim against the named Defendants—the School Board, Principal Crews, and Vice Principal Bowser—based on ill-treatment by fellow students. In other words, are Defendants liable for their response to the bullying as alleged in Plaintiff's Complaint.

Plaintiff asserts five enumerated counts against Defendants. Count I is a claim brought under Title VI for racial discrimination resulting from the racially hostile environment, an apparent product of the abusive conduct Plaintiff faced. Based on alleged harassment for perceived sexual orientation, Count II asserts a similar hostile environment claim under Titles IX. Counts III through V are state law claims. Because jurisdiction is premised on the federal questions raised in Counts I and II, the Court begins its analysis with those claims.

### A.    Federal Claims

As a preliminary matter, the Court notes that claims under Titles VI and IX are authorized only against institutions receiving federal funding. 20 U.S.C. § 1681(a); 42 U.S.C. § 2000d. *See also Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (Title VI claims); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999) (Title IX claims). For purposes of the analysis, the Court assumes that the School Board is alleged to be

6

such an institution, given its status as a political subdivision of the City of Richmond, Virginia. (Compl. at ¶ 6.) But because neither Principal Crews nor Vice Principal Bowser are "federally assisted programs," 42 U.S.C. § 2000d, they cannot be held liable under Title VI or Title IX. On this basis, the federal claims will be dismissed against the individual Defendants Principal Crews and Vice Principal Bowser.

With respect to Defendant School Board, Plaintiff's federal claims also fail. First addressing the Title IX claim specifically, the Court notes that harassment based on actual or perceived sexual orientation is not generally actionable under Title IX. *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1084 (7th Cir. 2000) (citations omitted). Instead, the discrimination must be based on the plaintiff's gender. *Id.* Here, Plaintiff's Title IX claim is based on other student's incorrect perception of his sexual orientation, not his gender.

Even if a Title IX claim could be brought on the basis of sexual orientation, Plaintiff would be required to allege that the School Board's "deliberate indifference effectively caused the discrimination." *Davis*, 526 U.S. at 642-43 (citation and internal quotation marks omitted); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 716 (4th Cir. 2007). The same "deliberate indifference" standard applied to Title IX claims applies to Title VI claims. *Whitfield v. Notre Dame Middle Sch.*, 412 Fed. App'x 517, 521 (3d Cir. 2011) (citing *Davis*, 526 U.S. at 633). In general, "courts should refrain from second guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. School administrators are deemed "'deliberately indifferent' . . . only where the

7

[school's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.*

In this case, Plaintiff alleges that Defendants did nothing but speak with the harassing children during a two month span. (Compl. at ¶ 18-19.) Ultimately, Principal Crews indicated that she would work with Plaintiff's parents and a bullying specialist to develop a plan to address the problem. But because Plaintiff transferred schools within days of Principal Crews expressing her willingness to develop an appropriate plan of action, it cannot be said that she acted in a "clearly unreasonable" manner. *Davis*, 526 U.S. at 648. Indeed, implementation of any "bullying plan" for Plaintiff at Summer Hill Elementary became both impossible and unnecessary once Plaintiff left to enroll at another public school. While school officials may have been able to do more, the allegations here do not amount to "deliberate indifference." Thus, the federal claims brought under Title VI and Title IX will be dismissed.

## B.  State Claims

With respect to Plaintiff's state law claims (Counts III through V), the Court declines to exercise supplemental jurisdiction over them. *See Kendall v. City of Chesapeake*, 174 F.3d 437, 444 (4th Cir. 1999) (acknowledging a district court's broad discretion to decline the exercise of supplemental jurisdiction when all federal claims are dismissed). Accordingly, the remaining state law claims will be dismissed without prejudice.

## IV. CONCLUSION

In sum, the Court finds that Plaintiff has not alleged facts plausibly giving rise to his federal claims. Moreover, the Court declines to exercise supplemental jurisdiction over any state law claims. Accordingly, the Court will dismiss Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6).

An appropriate Order will accompany this Memorandum Opinion.

                                                /s/
                                      Henry E. Hudson
                                      United States District Judge

Date: May 30, 2013
Richmond, Virginia