<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1813**

M.D., a minor child; MELODIE SHULER, as parent and next friend of M.D., a minor child,

        Plaintiffs – Appellants,

    v.

SCHOOL BOARD OF THE CITY OF RICHMOND; SHELETA CREWS, Individual and Official Capacities; RAYMOND BOWSER, Individual and Official Capacities,

        Defendants – Appellees.

-------------------------------------------

GAY, LESBIAN & STRAIGHT EDUCATION NETWORK,

        Amicus Curiae.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, District Judge. (3:13-cv-00329-HEH)

Argued: January 28, 2014         Decided: March 11, 2014

Before DUNCAN and FLOYD, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed in part and vacated in part, and remanded with instructions by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Floyd joined. Senior Judge Davis wrote an opinion concurring in part and dissenting in part.

**ARGUED:** Peter C. Renn, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., Los Angeles, California, for Appellants.  Jim H. Guynn, Jr., GUYNN, MEMMER & DILLON, P.C., Salem, Virginia, for Appellees.  **ON BRIEF:** Tara L. Borelli, Joshua J. Johnson, Los Angeles, California, Gregory R. Nevins, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., Atlanta, Georgia, for Appellants. Jennifer D. Royer, GUYNN, MEMMER & DILLON, P.C., Salem, Virginia, for Appellees.  George E. Kostel, Erika J. Karnaszewski, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Washington, D.C.; Katherine E. Lipper, Steven Y. Winnick, EDUCATIONCOUNSEL, LLC, Washington, D.C., for Amicus Curiae.

---

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Appellant M.D. appeals the district court's dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii) of his mother's pro se complaint filed on his behalf against the School Board of the City of Richmond ("School Board") alleging violations of his rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI") and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX").[1]  Although we would generally remand this appeal in full because non-attorney parents are not authorized to represent their children pro se in federal court, we are comfortable affirming the district court's dismissal of M.D.'s Title VI claim as a matter of law, precisely as we did in Myers v. Loudoun County Public Schools, 418 F.3d 395, 401 (4th Cir. 2005).  To be clear, we adopt no new rule of antidiscrimination law nor hold that the use of racial epithets can never give rise

---

[1] The complaint also named Summer Hill Elementary School Principal Sheleta Crews and Vice Principal Raymond Bowser as defendants in the Title VI and Title IX claims.  The district court dismissed these defendants because Title VI and Title IX authorize claims only against recipients of federal funds. See 20 U.S.C. § 1681(a); 42 U.S.C. § 2000d.  M.D. does not appeal these individual dismissals.  He also does not appeal the district court's dismissal without prejudice of the complaint's state law claims.  See Kendall v. City of Chesapeake, 174 F.3d 437, 444 (4th Cir. 1999).

3

to liability against a school board for failure to respond to student-on-student harassment for weeks under Title VI.  We are not presented with those circumstances here.

As to M.D.'s Title IX claim, we conclude that remand for further proceedings is necessary to ensure his rights are not prejudiced here by his mother's pro se representation below. Id.  The district court did not hold, as the dissent inexplicably contends, that harassment based on sex stereotyping is not actionable under Title IX.  It instead quite properly addressed the viability of a claim for harassment based on perceived sexual orientation that was alleged in the complaint. M.D. argues here that he in fact alleged harassment based on sex stereotyping.  This confusion requires us to remand to provide M.D. with the opportunity to retain counsel to file a clarified Title IX complaint.

We therefore affirm the district court's order in part, vacate the order in part, and remand with instructions to provide to M.D. sixty days to retain counsel and file an amended Title IX claim.  If M.D. fails to meet this deadline, we will affirm the district court's order in full.

I.

A.

M.D.'s complaint alleges that the School Board is liable under Title VI and Title IX for its administrators' response to alleged race- and gender-based student-on-student harassment M.D. endured while enrolled at Summer Hill Elementary School ("Summer Hill") from January 8, 2013, through April 15, 2013.[2] During this three-month period, M.D., a six-year old African-American male, was a target of verbal and physical assaults and theft by his peers. He was mocked for failing to fight back and repeatedly called "gay." M.D. became increasingly emotionally distressed and feigned illness to avoid school.

By February 2013, M.D.'s parents were in regular contact with Summer Hill. They notified Principal Sheleta Crews and Vice Principal Raymond Bowser about the harassment M.D. reported and requested, but did not immediately receive, information about the school's bullying-prevention policies. Vice Principal Bowser told M.D.'s mother that he spoke to the offending students in response to M.D.'s allegations. M.D.'s mother also began contacting the School Board directly and received email responses.

---

[2] We accept as true the well-pleaded facts in M.D.'s complaint and draw all reasonable inferences in his favor when reviewing the district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii). See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Just prior to Summer Hill's spring break, from March 29, 2013, through April 8, 2013, one Hispanic male student called M.D. "nigger," "bitch," and "motherfucker."[3] M.D.'s mother told Vice Principal Bowser about the incident and urged him to impose greater discipline in response because, in her view, just speaking with the offending student was not enough. Vice Principal Bowser disagreed and said he was doing all that he could within the bounds of his authority. On April 10th, the Hispanic male student again called M.D. "nigger" and pointed to him calling to the surrounding students, "Look at my little monkey." When M.D.'s mother informed Vice Principal Bowser and Principal Crews about the incident, Principal Crews promised to investigate later that day. On April 11th, Vice Principal Bowser told M.D.'s mother that he had spoken with the Hispanic male student, but Principal Crews did not begin an investigation that week. During spring break and the following week, M.D.'s mother also called the Richmond City Public School Administrative Offices repeatedly but received no response.

M.D.'s mother decided to withdraw her son from Summer Hill on April 15, 2013. That same day, she received a copy of the school's bullying policies from Principal Crews. On April 17,

---

[3] The exact date of this incident is somewhat unclear but construing the facts most liberally, we assume it occurred prior to Summer Hill's spring break.

2013, a bullying specialist called M.D.'s mother and stated that he should have been called in sooner. Ultimately, M.D.'s mother decided to enroll her son at a new school, Bellevue Elementary, where he started on April 29, 2013.

## II.

### A.

On May 22, 2013, M.D.'s mother filed a pro se complaint against the School Board alleging that her son's rights under Title VI and Title IX were violated by its deliberate indifference to the student-on-student harassment he endured based on race and perceived sexual orientation. She argued that the school administrators' decision not to escalate their response beyond speaking to the students was legally inadequate. She contended further that the School Board failed to appropriately train its administrators in responding to race- and gender-based harassment.

M.D. moved to proceed in forma pauperis, triggering the district court's review of the merits of the complaint under 28 U.S.C. § 1915(e). The district court held that M.D.'s complaint failed to state a claim upon which relief could be granted and dismissed the action pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii).

### B.

7

Regarding M.D.'s Title IX claim, the district court held that harassment based on perceived sexual orientation is not actionable under Title IX. It also held that the complaint failed to sufficiently allege intentional discrimination by the School Board and therefore could not state a claim for relief under Title VI or Title IX. The district court concluded that the school administrators' decision not to impose greater discipline during the two-month period after they received notice of the harassment was not "clearly unreasonable in light of the known circumstances." Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648 (1999). It noted that by April 15, 2013, Principal Crews had given M.D.'s mother a copy of the school's bullying policies and two days later a bullying specialist contacted her but at that point, M.D.'s mother had withdrawn her son from Summer Hill. After the district court issued a final order denying M.D.'s motion for reconsideration based on the reasoning in its initial order, M.D. filed the present appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

III.

Before reviewing the district court's order under the familiar standard governing dismissals under Federal Rule of Civil Procedure 12(b)(6), we must determine whether remand is

the only appropriate action because M.D., a minor, appeals his mother's pro se complaint filed on his behalf. Myers, 418 F.3d at 401. To ensure minors' rights are vigorously and competently protected, we have squarely held that non-attorney parents are barred from representing their children in federal court. Id. Generally, therefore, we would simply remand here for further proceedings.

We have, however, recognized a limited exception to the remand requirement if the minor is represented by counsel on appeal and asks us to decide a pure question of law mitigating any risk of prejudice. Id. Surprisingly, it is the government, not M.D., that urges us to remand. Now represented on appeal, M.D. contends that he is challenging the district court's legal conclusions which, he argues, are erroneous and will not change even if he files an amended complaint clarifying the basis of his federal claims. Regarding Title IX, M.D. argues that the district court erred by failing to recognize that the complaint alleged harassment based on M.D.'s failure to conform to gender stereotypes, which in his view is actionable under Title IX. Under both Title VI and Title IX, M.D. argues that the district court erred as a matter of law by failing to hold that the complaint plausibly alleges that the school administrators'

9

response was clearly unreasonable under Davis.[4] Thus, two of the requirements to avoid remand are met for both of M.D.'s statutory claims: he is represented by counsel and steadfastly urges us to decide this appeal. As explained below, however, we reach different conclusions as to whether M.D.'s Title IX and Title VI claims meet the most significant prerequisite, that the minor's legal rights will not be prejudiced on appeal by a non-attorney parent's pro se representation below. We discuss each statutory claim in turn.

A.

We conclude that M.D.'s rights will best be protected by the opportunity to retain and have counsel file a clarified Title IX claim on remand. The district court held as a matter of law that M.D.'s complaint failed to state a claim under Title IX because it alleged harassment based on perceived sexual orientation.[5] On appeal, M.D. contends that he actually alleged

---

[4] On appeal, M.D. also argues that the district court should have held that M.D. stated a claim for relief under the Equal Protection Clause of the Fourteenth Amendment. However, the complaint does not allege that M.D.'s right to equal protection was violated and therefore the plausibility of this claim is not before us here. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

[5] As previously noted, the district court did not, as the dissent contends, hold as a matter of law that harassment based on sex stereotyping is not actionable under Title IX. Instead, it read the complaint as alleging harassment based on sexual orientation. J.A. 28 ("Here, Plaintiff's Title IX claim is (Continued)

10

harassment based on a failure to conform to gender stereotypes. Thus he argues that the district court misunderstood the legal basis for his claim, and yet still maintains that he would be better served by a decision on the law here instead of by an opportunity to clarify his complaint on remand. We disagree. Our rule against non-attorney parents representing their minor children pro se aims to avoid exactly this type of potentially prejudicial confusion. We therefore vacate the district court's order and remand with instructions to provide M.D. with sixty days to retain counsel and file an amended Title IX complaint. Our sixty-day deadline ensures that these further proceedings will not result in undue delay. We now address M.D.'s Title VI claim.

B.

M.D.'s Title VI claim falls into the limited exception to our remand requirement because it turns on a pure question of law mitigating any risk of prejudice. We therefore review de novo the district court's dismissal for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).

---

based on other student's [sic] incorrect perception of his sexual orientation, not his gender."). In contrast to M.D.'s Title VI claim, therefore, M.D. contends on appeal that the district court failed to recognize the correct legal basis for his Title IX claim below.

11

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). Although we accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff, a complaint must "'permit[] [us] to infer more than the mere possibility of misconduct' based upon '[our] judicial experience and common sense.'" Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). The facts alleged in M.D.'s complaint fail to meet this standard.

A private cause of action for damages under Title VI is authorized only for intentional discrimination based on race, color, or national origin. Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 70 (1992). Here, M.D. seeks to hold the School Board accountable for the actions of third parties, namely its administrators' response to student-on-student harassment based on his race. While the school administrators were on notice that M.D. was being bullied by February 2013, the complaint only alleges specific facts regarding harassment based on race beginning at the end of March. Contrary to the dissent's contention, therefore, the complaint cannot be construed to allege that the school knew M.D. was being harassed based on a protected characteristic under Title VI until weeks before his withdrawal from Summer Hill. As a matter of law, M.D. cannot plausibly allege the required intent by challenging

12

only the timeliness and adequacy of the administrators' response under these circumstances. In fact, Vice Principal Bowser and Principal Crews were given just days to respond because Summer Hill's spring break fell just after M.D.'s mother reported the first incident, and Vice Principal Bowser spoke with the offending student by April 11th. By April 15, 2013, M.D.'s mother received a copy of the school's bullying policies and two days later a bullying specialist contacted her. Although M.D.'s mother feels that the school's response was dilatory and inadequate during this two week period and throughout M.D.'s time at Summer Hill, the complaint does allege that the school did in fact respond after being informed of the Hispanic male student's use of racial epithets. We will not second guess the administrators' decisions here. See Davis, 526 U.S. at 648. Our reticence is particularly critical because a school must balance the rights of other students when shaping its response to reported bullying. We hold therefore that M.D.'s complaint fails to state a claim for relief under Title VI against the Richmond School Board.[6]

---

[6] M.D.'s additional contention that the School Board should have been on notice that Summer Hill was a racially hostile environment and responded with greater education and prevention efforts is unsupported by any factual allegations. It therefore fails to "nudge[] [his] claim[] across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 560 (2007).

IV.

With sympathy for M.D.'s plight based on the allegations in his complaint and for his mother's attempts to ensure her son's well-being, we are nevertheless constrained to hold that his claim against the School Board for intentional discrimination under Title VI fails as a matter of law. For the reasons above, we direct the district court to provide to M.D. sixty days to retain counsel and file an amended Title IX complaint. The district court's order is therefore

AFFIRMED IN PART AND VACATED IN PART,<br>AND REMANDED WITH INSTRUCTIONS.

DAVIS, Senior Circuit Judge, concurring in part and dissenting in part:

"[N]on-attorney parents generally may not litigate the claims of their minor children in federal court." Myers v. Loudoun County Public Schools, 418 F.3d 395, 401 (4th Cir. 2005). As counsel for the school board aptly conceded at oral argument, Myers instructs this Court to apply the non-attorney parent litigation rule to this entire case and remand it to the district court. Yet instead, the majority states that it is "comfortable," maj. op. at 3, carving the case in half by applying Myers' non-attorney parent litigation rule to M.D.'s Title IX claim but not to his Title VI claim. I can discern no basis in law, fact, or logic for that distinction. Accordingly, although I concur in the vacatur and remand of the Title IX claim, I am constrained to dissent from the affirmance of the dismissal of the Title VI claim.

The majority offers two reasons for distinguishing between the Title VI and Title IX claims for purposes of the non-attorney parent litigation rule: first, it states that the former claim "turns on a pure question of law mitigating any risk of prejudice [to M.D.]," maj. op. at 10, and therefore falls into an exception to the Myers rule; second, it states that, as a matter of law, M.D. cannot meet the intent requirement of Title VI "by challenging only the timeliness and

15

adequacy of the administrators' response because the alleged use of racial epithets began just weeks before M.D.'s withdrawal from Summer Hill," maj. op. at 11.

Each of the proffered reasons puzzles me.

With respect to whether our resolution of the Title VI claim turns on a question of law, the majority's argument conveniently ignores that the Title IX claim <u>also</u> turns on a pure question of law: whether Title IX permits sex-stereotyping claims when the victim and harasser are both of the same sex. The district court answered "no," ruling that such harassment constitutes sexual orientation discrimination and therefore is not actionable under Title IX. M.D. appealed, arguing that his claim fits under Title IX's prohibition on sex discrimination on a gender stereotyping theory. If anything, the Title IX issue is a more neatly-presented question of law for our resolution. All of us agree that under the rule of <u>Myers</u>, the district court should not have resolved that issue in the absence of counsel for the minor plaintiff. Manifestly, that is a correct analysis.

The majority's second proffered reason is even more puzzling: it states that there is no set of facts that M.D. could plead that would satisfy the intent requirement of Title VI, and to make its point it focuses on the amount of time that

16

the school board had to respond to M.D.'s victimization on the basis of racialized bullying.

Even if we could permissibly decide this case on the basis of a complaint filed by a non-attorney parent (which we cannot under Myers), this argument is refuted by the allegations in the prolix complaint in the record. Specifically, the majority states that only a few weeks passed between M.D.'s parents' report of the bullying to the school and M.D.'s withdrawal from the school, but that assertion is expressly contradicted in the complaint: "[f]rom February of 2013 to April of 2013, the Plaintiffs' mother and father" visited the school to state their concerns about the racialized bullying of M.D. J.A. 6 (emphasis added). In other words, construing the complaint – as we must – in the light most favorable to M.D. (if we are going to "construe" it at all), there were months of inactivity by the school board in the face of these allegations of racialized bullying. The majority's parsing of the complaint to select a timeline of events justifying affirmance of the district court is in vain and demonstrates exactly why we should not decide appeals from the grant of Rule 12(b)(6) motions dismissing complaints filed by non-attorney parents.

Nor is it likely that the majority's argument enjoys any substantial foundation in law. The majority opinion codifies as law the belief that no jury may find a school board liable under

17

Title VI for failing to act for weeks after a six-year old and his parents reported that he was repeatedly called a "nigger" and a "little monkey." J.A. 5. Besides being a startling new rule of antidiscrimination law, the majority's holding flatly contradicts our prior case law: given that the use of these racial epithets has been held to radically change the dynamics of even an adult workplace environment, Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001), it seems quite fantastic to hold that the same epithets used against a highly impressionable six-year old boy at school (where he has no easy way of evading his harassers) cannot ever give rise to liability against school administrators for their failure to act for weeks. I would be troubled by this holding in any other case, see Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1033 (9th Cir. 1998) (holding that school districts may be held liable under Title VI for deliberate indifference to student-on-student racial harassment); I am disturbed that we embrace it in this improperly pled case brought by a non-attorney parent.

Lacking a foundation in fact or law, the majority's opinion is left begging the question posed by the non-attorney parent litigation rule. The rule is child-protective: it prevents well-intentioned but legally inept parents from endangering the interests of their minor children. Myers, 418 F.3d at 401. Such danger can arise as readily from an inartfully pled

18

complaint as it might from the service of garbled interrogatory responses, a fumbling cross-examination at trial, or an incoherent closing argument. If M.D.'s interests were prejudiced as to one count because of poor pleading or inadequate parental representation or "potentially prejudicial confusion," maj. op. at 10, then his right not to be similarly prejudiced as to the other count in the same complaint should obtain as well.[*]

No litigant has asked us to recognize the distinction embraced by the majority; the district court did not make that distinction, or even pay heed to its duty, unmistakably imposed by Myers, to decline to adjudicate the claims at all in the

---

[*] Albeit only implicitly, concerns over judicial integrity and public confidence in the adversarial process also undergird the rule of Myers, for it is a truism that

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions--all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition . . . . [I]t is important to reaffirm . . . the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process.

United States v. Shaffer Equipment Co., 11 F.3d 450, 457 (4th Cir. 1993).

absence of counsel for the minor plaintiff. Indeed, the answer is that there is no cognizable distinction. <u>Myers</u> must apply with equal force to both counts. Accordingly, I respectfully dissent from so much of the majority opinion as affirms any portion of the judgment.